UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION


| | | |
|---|---|---|
| ETHAN BROOKS HARTER | § | |
| v. | § | Civil Action 4:16-CV-100 |
| REALPAGE, Inc. | § | Judge Mazzant |


PLAINTIFF'S RESONSE IN OPPOSITION TO

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now ETHAN BROOKS HARTER, and files this his Response to Defendant's Motion for

Summary Judgment, and in support hereof would show:

FACTS

Defendant's statement of "Undisputed Material Facts" is generally accurate, but fails to

tell the entire story.[1]  Plaintiff, Ethan B. Harter, had just recently graduated from the University

of North Carolina, Chapel Hill.  He had been admitted to the University of Denver School of

Law for the fall term, 2015, beginning in August.  Plaintiff was in Denver looking for housing.

On July 11, 2015, he submitted a lease application with a complex known as "Legend Oaks"

Apartments.  The leasing agent ran a credit/background check, and informed Plaintiff that they

would decline to offer him a lease.  The stated reasons were that the background check showed

that he had a criminal history.  It is noteworthy that the specific question asked in the rental

---

[1] See Exhibit 1, the Declaration of Plaintiff.

application is whether the applicant had been arrested for, charged with or convicted of a misdemeanor or felony involving a sex crime, drug crime, or crime of violence.[2]  The background check resulted in the apartment manager refusing to lease an apartment based upon a reference to a criminal history. Therefore, the necessary implication was that the background check disclosed such an offense.  Upon being told that the background check results rendered him ineligible to rent, Plaintiff called Defendant to dispute the report.  No action was taken at that time.

Then, on the following day, Plaintiff submitted an application for a lease with a complex known as "Helios".[3]  The application was submitted.  A credit/background check was run.  And again, the report, also furnished by Defendant, came back positive.  Defendant advised Helios that Plaintiff had been arrested for, charged with or convicted of a crime involving drugs, violence or sex.  Again, Plaintiff attempted to dispute this report but no action was taken.

On both occasions Plaintiff disputed the accuracy of these reports to the leasing agent. The agents however, advised that because it was the weekend (July 11 being a Saturday, and July 12 being a Sunday) the dispute could not be addressed until July 13.  Meanwhile, Plaintiff had paid a non-refundable application fee to both apartment complexes.  In addition to the monetary loss, the non-refundable lease application, Plaintiff suffered anxiety and physical illness as a result of being falsely accused of having been arrested for, charged with or convicted of an offense involving sex, drugs or violence.

It is undisputed that the report of a criminal background was wrong.  Exhibit A-2 (Doc 18-) to Defendant's Motion is its report dated July 11, 2015.  On the second page it reflects,

---

[2] See Exhibit C-1 to Defendant's Motion, Doc 18-13.
[3] See Exhibit D-1 to Defendant's Motion.  Doc 18-14.

under, "Offense Information", that a charge, "NOT PROVIDED", filed on 3/11/2011, from Montgomery County, Case #700487, was associated with Plaintiff.  The information was provided to Defendant by a third party provider, identified as "Genuine Data Services, LLC"., who identified its source as the "North Carolina Courts".  Exhibit A-2 (Doc 18-3) is an identical report run the following day.

Defendant acknowledges that the information it provided presented in inaccurate picture of Plaintiff's background, although it insists that there is a "criminal" background.  Defendants affiant, Debra Stockton, acknowledges that on July 13 a further inquiry was made to an entity known as "Backgroundchecks.com", and, this inquiry reflected that the only "criminal" activity had been traffic citations. Exhibit A-5[4] discloses that Plaintiff had suffered convictions for an "infraction" referred to as "Plea Responsible to Lesser/Responsible", with a fine of $100, "Failure to Comply License Restrictions" with a fine of $50[5], a ticket for no insurance, which was dismissed, a charge of "Cancl/Revok/susp Certif/Tag" which was dismissed,  a speeding ticket that was unresolved, and lastly, another speeding ticket that had a disposition of "Plea Responsible to Lesser/Responsible" with a fine of $50.

A comment about statements made in the Declaration of Debra Stockton is appropriate.[6] Ms. Stockton is the Senior Vice-President of Defendant. Ms. Stockton states that Exhibits A-1 and A-2 are copies of Defendant's reports submitted to the property manager. (Paragraph 4)  She states that Defendant is unaware of any inaccuracies in the reports. She then states that the records provided were based upon the public records of the North Carolina Court system.   In

---

[4] Doc 18-6
[5] This appears to be the specific charge that gives rise to this suit.  It is listed as case NO. 700487, with an offense date of 3/10/11, and a disposition date of 7/28/11.  A certified copy of the judgment is proffered by Defendant as its Exhibit B, Doc 18-11
[6] Doc 18-1

that same paragraph (7) she acknowledges that a further check of the public record by another subcontractor, "Backgroundchecks.com" disclosed that the "Not Provided" offense was a traffic citation.  So, what we have here is Defendant admitting that it provided incomplete and inaccurate information, especially in light of the specific information requested by the property managers; and further, that it had at its disposal the means to readily ascertain the entire truth of the matter.  Moreover, Defendant acknowledges that its report was wrong.   In its Exhibit A-6, the e-mail to the property manager (and Exhibit 7, the e-mail to the 2nd property manager,) Defendant sates that:

> "The criminal section of the report provided to you regarding Ethan [sic} Arter was derived from public records from the North Carolina courts. Based upon our investigation, we have determined that the record should be removed from the consumer's file".

So, Defendant understands that the reports of July 11 and 12 were wrong and left in inaccurate picture of Plaintiff's "criminal" background. Nevertheless, it published to the property managers "facts" from which a reasonable person can draw the inference that Plaintiff had been charged with, arrested for or convicted of a crime of sex, drugs or violence.

## DEFAMATION

The Civil Practice and Remedies Code defines libel:

> "A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West)

Plaintiff alleges that Defendant committed libel *per se*.

> "Libel per se means the written or printed words are so obviously hurtful to the person aggrieved that they require no proof of their injurious character to make them actionable. *Knox v. Taylor,* 992 S.W.2d 40, 50 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Defamation is actionable per se if it injures a person in his office, business, profession, or occupation. *Id.* A false statement that charges a  person with the commission of a crime is also libelous per se. *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984).

<u>Morrill v. Cisek</u>, 226 S.W.3d 545, 549-50 (Tex. App.—Houston [1st Dist.] 2006, no pet.)

Defendant communicated to third parties that Plaintiff had been found guilty or accused of a felony or serious misdemeanor offense.  This was false.

In this case there is no dispute that the report that Plaintiff had been arrested for, charged with or convicted of a criminal offense, as defined by its customers (the apartment complexes) was false.  The questions on the rental application were very specific.  Was the applicant ever charged with, arrested for or convicted of an offense involving drugs, violence or sex?  When Defendant told the complexes that there was a record of a criminal offense, the clear implication was that it was for such an offense.  The apartment complexes were not concerned about speeding, driving a car with improper equipment, or curiously, even vandalism.  Only crimes involving sex, drugs and violence were on their radar screens.  So, when Defendant stated that Plaintiff had a criminal record, it was implying, if not stating, that he had been charged with, arrested for or convicted of a sex, drug, or violent crime.

However, Defendant relies on the defense of qualified privilege.

> "A qualified privilege extends to communications made in good faith on a subject in which the author has an interest or a duty, to another person having a corresponding interest or duty. (Cites Omitted). The effect of the privilege is to justify the statements when they are made without actual malice

Martin v. Sw. Elec. Power Co., 860 S.W.2d 197, 199 (Tex. App.—Texarkana 1993), writ denied

(Feb. 16, 1994)

If there is malice, then the defense of qualified privilege fails.

The notion that "malice" in the context of a libel suit, connotes ill feeling is wrong.  In a

libel case:

> "Malice has been defined as ill will, bad or evil motive, or such gross indifference or
> reckless disregard of the rights of others as to amount to a willful or wanton act. (Cite
> Omitted). Malice in a libel suit means publication with the knowledge that the
> communication was false or with reckless disregard for whether it was false. *El Paso
> Times v. Trexler,* 447 S.W.2d 403, 405 (Tex.1969).

Marathon Oil Co. v. Salazar, 682 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1984), writ
refused NRE (Mar. 27, 1985)

In the context of a defamation suit with respect to a public figure, it is an element of the cause of

action that the publisher of the statement acted with actual malice.  The Supreme Court has said:

> "To establish actual malice, the plaintiffs must prove Hearst and Moore published the
> article with either knowledge of the falsity or reckless disregard for the truth. *See New
> Times, Inc. v. Isaacks,* 146 S.W.3d 144, 162 (Tex.2004). Knowledge of falsity is a
> relatively clear standard, but reckless disregard is much less so. *Bentley v. Bunton,* 94
> S.W.3d 561, 591 (Tex.2002). Reckless disregard is a subjective standard, requiring
> evidence that Hearst and Moore entertained serious doubts as to the truth of the article at
> the time it was published. *See id.*

Hearst Corp. v. Skeen, 159 S.W.3d 633, 637 (Tex. 2005)

The Dallas Court has said:

> "The phrase "actual malice" in the context of defamation does not include ill will, spite,
> or evil motive. *Huckabee v. Time Warner Entertainment Company L.P.,* 19 S.W.3d 413,
> 420 (Tex.2000). Instead, a public figure must prove that the defendant made the
> statement "with knowledge that it was false or with reckless disregard of whether it was
> true or not." *See id.,citing New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84
> S.Ct. 710, 11 L.Ed.2d 686 (1964). Reckless disregard is also a term of art. *Huckabee,* 19
> S.W.3d at 420. To establish reckless disregard, a public figure must prove that the
> publisher "entertained serious doubts as to the truth of his publication."

Belo Corp. v. Publicaciones Paso Del Norte, S.A. De C.V., 243 S.W.3d 152, 158 (Tex. App.—El Paso 2007, pet. denied)

The Houston Court discussed this topic in some detail, and in quoting the Supreme Court, said:

> "In the defamation context, "actual malice," is a term of art developed in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In *Hagler v. Procter & Gamble Mfg. Co.,* 884 S.W.2d 771, 772 (Tex.1994), the Texas Supreme Court recently restated the definition of actual malice as applicable in defamation cases:

> [A]ctual malice is a term of art which is separate and distinct from tradition common law malice. Actual malice in the defamation context does not include ill will, spite or evil motive but rather requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). "Actual malice is not ill will, it is the making of a statement with knowledge that it is false or with reckless disregard of whether it is true." *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989).

> "Reckless disregard" is defined as a high degree of awareness of probable falsity, for proof of which the plaintiff must present sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. *Carr v. Brasher,* 776 S.W.2d at 571; *Casso v. Brand,* 776 at 558.

Cent. Freight Lines, Inc. v. Kackley, 14-96-00220-CV, 1997 WL 211612, at *4-5 (Tex. App.—Houston [14th Dist.] May 1, 1997, no writ)

The determination of whether a libelous statement was made with actual malice is a fact intensive inquiry.  Scott v. Poindexter, 53 S.W.3d 28, 33 (Tex. App.—San Antonio 2001, pet. denied).  The immediate question is whether Defendant has established as a matter of law an absence of malice, as the term is used in the contest of libel law.  Clearly it has not.  Its evidence is that it used a subcontractor, who in turn used a subcontractor, to come up with a report that there was a criminal record out of Montgomery County, North Carolina.  No steps were taken by Defendant to vet the accuracy of the information.  No steps were taken by Defendant to develop any details that underlay the "criminal offense" it was reporting.  Plaintiff urges that this cavalier

conduct of Defendant to the truth is the very definition of "reckless disregard", rendering the defense of privilege inapt in this case

## IS RECOVERY FOR DEFAMATION BARRED BECAUSE PLAINTIFF CONSENTED TO THE REPORT?

Defendant urges that it is protected by an absolute privilege because Plaintiff consented to the transmission of the report to the property managers.  In support, Defendant cites Smith v. Holley, 827 S.W.2d 433, 438 (Tex.App.—San Antonio, 1992, writ denied). The application of this case is misplaced.  *Smith* was an employment case. The plaintiff was denied employment with the U. S. Marshall's office, based upon information it received from her prior employer, the City of Big Spring Police Department.  She had been a probationary police officer and was terminated due to poor performance.  When this information was provided to the Marshall's office, it declined to employ her.  A jury awarded a substantial verdict in her favor, but the Court of Appeals reversed and rendered.  It found that because she did consent to the release of information she could not recover.

This principle does not extend to this case, however, because Plaintiff did not know that the inaccurate, defamatory report would be made. Accordingly, the bar in *Smith* does not apply here.  A more complete statement of the principle is as follows:

> "A showing that a plaintiff consented to, authorized, procured, or invited the alleged defamatory statements bars recovery. *Lyle v. Waddle,* 144 Tex. 90, 94, 188 S.W.2d 770, 772 (Tex.1945);  (cites omitted). "When a plaintiff has consented to a publication, the defendant is absolutely privileged to make it, even if it proves to be defamatory." *Smith,* 827 S.W.2d at 436 (footnote omitted). **Effective consent to a defendant's statements requires that the plaintiff know what the defendant will say when he talks to third parties.** *See Frank B. Hall & Co.,* 678 S.W.2d at 617-18. (Emphasis added)

Rackley v. Decker Food Co., 05-94-01052-CV, 1995 WL 447567, at *2 (Tex. App.—Dallas July 26, 1995, writ denied)

Frank B. Hall & Co., Inc. v. Buck, 678 S.W.2d 612, 617 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) was a defamation case where the jury found for plaintiff, and the Court of Appeals affirmed.  The defendant was plaintiff's former employer.   Based upon its statements plaintiff was denied employment at another company.  The former employer urged that there could be no recovery because the publication was consented to by plaintiff.  The Court rejected this argument.

> "Hall is correct in stating that a plaintiff may not recover for a publication to which he has consented, or which he has authorized, procured or invited, *Lyle v. Waddle,* 144 Tex. 90, 188 S.W.2d 770 (1945); and it may be true that Buck could assume that Hall's employees would give their opinion when asked to do so. However, there is nothing in the record to indicate that Buck knew Hall's employees would *defame* him when Barber made the inquiries. The accusations made by Kaliff, Eckert and Hilley were not mere expressions of opinion but were false and derogatory statements of fact. There is sufficient evidence that Buck had no knowledge of what Kaliff, Eckert and Hilley would say to Barber".

Frank B. Hall & Co., Inc. v. Buck, 678 S.W.2d  at 617

This principle was applied by the Dallas Court   Ramos v. Henry C. Beck Co., 711 S.W.2d 331 (Tex. App.—Dallas 1986, no writ). This, too, was an employer/employee case.  A report was made to the employer indicating that plaintiff had committed theft.  Plaintiff was terminated.  Defendant told plaintiff that he was seen stealing a power tool and placing it in the trunk of his car.  The statement was made in the presence of a third party.  Because of the presence of a third party the statement was found to be a "publication"  for purposes of libel law. Id at 711 S.W.2d at 335. The Court then found that there was a qualified privilege for the employer to make the publication, but that it was not established as a matter of law.  Id at 336.  Lastly, the Court rejected the argument that plaintiff had consented to the publication and therefore there was an absolute bar to recovery.

"A plaintiff may not recover for a publication to which he has consented, or which he has authorized, procured, or invited. *Lyle v. Waddle,* 144 Tex. 90, 188 S.W.2d 770, 772 (1945). **However, for invitation or consent to exist, there must be evidence to indicate that Ramos knew Beck's employee would *defame* him when Ramos made his inquiry.** *Frank B. Hall & Co., Inc.,* 678 S.W.2d at 617. We find no such evidence. Furthermore, in his affidavit, Ramos denies that he consented to the publication of the accusations against him. Because conflicting inferences may be drawn from Ramos's two statements, a fact issue is raised. *Gaines,* 358 S.W.2d at 562.  (Emphasis added)

Ramos v. Henry C. Beck Co., 711 S.W.2d  at  336


The question then, is not merely whether Plaintiff consented to the making of the report, but whether, in so doing, he knew that the defamation would be forthcoming.  This is contrary to the facts and the evidence.  Plaintiff did not know he would be defamed.  He had no expectation of being defamed.  And, he did not consent to being defamed.  Plaintiff had every reason in the world to expect that he would pass the background check because he had never been arrested for, charged with or convicted of a felony or misdemeanor involving sex, drugs or violence.  Because he did not consent to being defamed, the absolute privilege claimed herein by Defendant does not apply.


FAIR CREDIT REPORTING ACT

Defendant urges that it is entitled to summary judgment on the FCRA claims because its report was accurate and because there is no willful violation of the Act.  Defendant's position is without merit.

Plaintiff also sues under the Fair Credit Reporting Act, 15 U.S.C. §1681a, et. seq.  The reports at issue fall within the definition of "Consumer Report" under 15 U.S.C. §1681a(d)(1). The Act imposes certain obligations on Defendant and those in its business.

> "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates".  15 U.S.C.A. § 1681e (West)

When a reporting company relies on public records relating to criminal matters, it imposes an additional requirement:

> **"(3) Certain public record information.**--Except as otherwise provided in section 1681k of this title, a consumer reporting agency shall not furnish an investigative consumer report that includes information that is a matter of public record and that relates to an arrest, indictment, conviction, civil judicial action, tax lien, or outstanding judgment, unless the agency has verified the accuracy of the information during the 30-day period ending on the date on which the report is furnished."  15 U.S.C.A. § 1681d (West)

Based upon these two provisions, Defendant violated the FCRA.  It reported to the apartment complexes that Plaintiff had a criminal record; and, as a result, a lease was denied.  The information upon which Defendant relied was evidently provided by Equfax.[7]  Page 3 of the report states that an undefined charge, dated 3/11/2011 from Montgomery County, Case no, 700487, was associated with Plaintiff.  The source of the information was an entity known as "Genuine Data Services, LLC."  No evidence is provided as to the steps taken by Defendant to verify the accuracy of the information.  No evidence is provided to show the reasonable procedures taken by Defendant to assure the "maximum possible accuracy of the information".  Defendant urges that because there was a case involving Plaintiff from Montgomery County, North Carolina, a traffic citation, that the information that it conveyed to the apartment complexes was accurate; and therefore, there is no violation of the FCRA.  The authorities state otherwise.

---

[7] See Exhibit A-1 to Defendant's Motion, Doc 18-2.

There are four elements to a cause of action under the FCRA:  (1) inaccurate information; (2) a failure to follow reasonable procedures to ensure maximum possible accuracy; (3) injury; (4) proximately caused by the erroneous report. See  Pinner v. Schmidt, 805 F.2d 1258, 1262 (5th Cir. 1986); and  Philbin vs. Trans Union Corporation, 101 F.3d. 957, 965 (3rd Cir., 1996); Shaunfield vs Experian Information Solutions, Inc  991 F.Supp. 786, 799 (ND Tx   2014). "Reasonable procedures" are those which would be undertaken by a reasonable, prudent person. Pinner v. Schmidt, 805 F.2d 1263.  The question of the reasonableness of the procedures used by the credit reporting agency is generally a question of fact.   Guimond vs. Trans Union Credit Information Company, 45 F.3d. 1329 (9th Cir. 1995); Dalton vs. Capital Associated Industries, Inc., 257 F.3d 409, 416 (4th Cir 2001).   Moreover, compliance with the act is not met by merely reporting information accurately that it receives from others.  Bryant vs. TRW Inc., 689 F.2d 72, 78, (6th Cir. 1981); and Philbin vs. Trans Union Corporation.id.

Defendant urges that it cannot be liable under the FCRA because it merely reported information that it was provided by its provider, as was found in the records of the North Carolina Court system.  Defendant is wrong.  In analyzing the facts of this case in light of the authorities discussed below, it is helpful to recall the facts here.  Defendant was asked whether the information provided by Plaintiff, that he had not been arrested for, charged with or convicted of a crime involving sex, drugs or violence, was accurate.  Defendant replied that the public records showed that the representation of Plaintiff was wrong.[8]

---

[8] Plaintiff acknowledges that Defendant did not state this explicitly.  However, Defendant did report that there was a criminal record, and the information it provided to the apartment complexes did not state the substance of such record.  The report caused the property managers to disqualify Plaintiff as a potential tenant.  Therefore, the reasonable deduction from the evidence is that the managers viewed the positive report from Defendant as showing the Plaintiff had been arrested for, charged with or convicted of a crime of sex, drugs or violence.

Dalton vs. Capital Associated Industries, Inc, *supra*, is directly on point.   In this case the plaintiff had applied for a job.  In connection with the application he was asked if he had been convicted of a felony. He answered, "no".  The employer engaged the defendant to conduct a background check.  The defendant engaged a subcontractor to do the actual search.  The search revealed a conviction for Third Degree Assault, in Colorado.  This, it turns out, was not a felony, but a misdemeanor.  Nevertheless, the subcontractor and defendant reported it as a felony. The subcontractor did so after calling the court and asking the clerk whether the conviction was for a felony or misdemeanor, and the clerk replied that it was a felony conviction.  The job offer was withdrawn, and plaintiff sued under the FCRA.  The trial court granted the defendant's Motion for Summary Judgment, finding the defendant's procedures to be reasonable.  The Court of Appeals reversed.  The Court rejected the argument that there was no liability because the verbatim report was passed from the court clerk to the employer.  The Court reasoned that a jury could find that the implication of the report was that the plaintiff had been convicted of a felony. 257 F.3d at 416.  The Court further rejected the defendant's argument that the summary judgment was properly granted because there was no evidence of willfulness. *Id* at 418. Willfulness is only necessary as a prerequisite to exemplary damages.

Poore vs. Sterling Testing Systems, Inc., 410 F.Supp 557 (ED KY 2006) is a similar case, too.  Here,  the plaintiff applied for a job.  A background check was run, and a third party vendor engaged by the defendant to conduct the search.  That vendor then hired yet another vendor to do the search. It used inaccurate criteria, and then reported that plaintiff had a criminal record. The search erroneously concluded that plaintiff had a criminal record.  Plaintiff contested the results, and the search was re-done. This time, it verified that the personal information regarding the person who was found to have a criminal record did not match that of the plaintiff, and it

affirmed the lack of a criminal record.  Nevertheless, the job offer had been rescinded, and the

job opening was filled. The defendant moved for summary judgment, which the trial court

denied, except in certain small parts.  Citing ***Dalton**, supra,* the Court noted that the term

"inaccurate" means not only that the information is "patently incorrect" but that "it is misleading

in such a way and to such an extent that it can be expected to have an adverse effect". 410

F.Supp. at 570.  The Court concluded that it could not find, as a matter of law, no liability on the

part of the defendant.  In doing so it made reference to §1681k(a) of the Act requiring a reporting

agency, within the thirty days preceding the report, to verify the accuracy of the its report that a

subject has a criminal record.  *Id* at 571.

Courts in this Circuit have adopted the principle that a report may be inaccurate if it is

misleading in a way that could cause a reasonable person to make an adverse credit decision.

Shaunfield vs Experian Information Solutions, Inc  991 F.Supp. 786 (ND Tx  2014) was a ruling

on a Rule 12(b)(6) motion.  In denying the Motion to Dismiss filed by the reporting company,

the Court noted that an aggrieved party may recover for his injuries, 991 F.Supp at 796, that the

test for reasonableness of procedures is what a reasonable and prudent person would do, (*id* at

799) and that a report could be inaccurate if it is "misleading in such a way and to such an extent

that it can be expected to adversely affect credit decisions".  *Id* at 798.

Damages are an element of a cause of action under the FCRA.  Plaintiff has proffered

evidence of damages.  As to the first complex:  Plaintiff paid an application fee that was non-

refundable.  As a proximate result of the erroneous report furnished by Defendant that fee was

forfeited.  Further, Plaintiff has proffered evidence of emotional distress suffered as a result of

being accused of having been arrested for, charged with or convicted of a crime involving sex,

drugs or violence.  Such damages are compensable under the FCRA.  See Guimond vs. Trans

Union Credit Information Company, 45 F.3d. 1329, 1333 (9th Cir. 1995).  Moreover, the fact that

Plaintiff ultimately was allowed to rent from the second complex does not render his claim

subject to dismissal since a denial of credit is not a prerequisite to recovery under the FCRA.  *id*

Lastly, Defendant itself has made out a *prima facia* case in **favor** of Plaintiff by acknowledging,

through its evidence, that the information it provided was inaccurate.  ***Guimond*** also held that

evidence showing that a report was inaccurate is sufficient to make a *prima facia* violation of the

FCRA.  *id.* Such is the case here, since the information provided by Defendant caused the

property managers to find that Plaintiff failed the background check, where the inquiry was

whether he had been charged with, arrested for or convicted of a crime of sex, violence or drugs.

WHEREFORE, PREMISES CONSIDERED, Plaintiff urges the Court to deny the Motion for

Summary Judgment.


Respectfully submitted,

/s/ Kenneth S. Harter
State Bar ID 09155300

LAW OFFICES OF KENNETH S. HARTER
1620 E. Beltline Rd.
Carrollton, Tx. 75006
(972) 242-8887
FAX (972) 446-7976
kenharter@tx.rr.com


## Certificate of Service

I certify that a true and correct copy of the foregoing was served on counsel for Defendant on
this the 25th day of July, via the ecf system, addressed to:

Daena G. Ramsey
530 So. Carrier Pkwy, Suite 300
Grand Prairie, Tx. 75051
dramsey@vrlaw.net

/s/ Kenneth S. Harter
Kenneth S. Harter