# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ETHAN BROOKS HARTER | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-100 |
| | § | Judge Mazzant |
| REALPAGE, INC. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is RealPage, Inc.'s Motion for Summary Judgment (Dkt. #18). The Court, having considered the relevant pleadings, finds that Plaintiff's Motion for Summary Judgment should be granted.

## BACKGROUND

Plaintiff Ethan Brooks Harter ("Harter") visited Denver to secure housing for his upcoming first term at the University of Denver School of Law. On July 11, 2015, Harter submitted a lease application with the Legend Oaks Apartments. The rental application asks whether the applicant has ever "been charged, detained, or arrested for a felony, misdemeanor involving a controlled substance, violence to another person or destruction of property, or a sex crime that was resolved by conviction, probation, deferred adjudication, court ordered community supervision, or pretrial diversion?" (Dkt. #18, Exhibit C-1). The leasing agent ran a criminal background check using resident screening software owned by Defendant RealPage, Inc. ("RealPage"). In its screening process, Realpage utilized vendor Genuine Data Services, LLC, which showed that Harter had a conviction in the North Carolina courts. Specifically, the report contained a conviction in Montgomery County, North Carolina, Case No. 700487, and stated the offense was "NOT PROVIDED." The apartment manager rejected Harter's application

based on the report. Harter called RealPage to dispute the report, but no action was taken by RealPage at that time.

The next day, on July 12, 2015, Harter submitted an application with a different apartment complex called Helios. Helios utilized RealPage as well, which returned a positive report on Harter. On July 13, 2015, Harter submitted a dispute to RealPage. That day, RealPage utilized a second vendor, backgroundchecks.com, to confirm the traffic offense was accurate. But RealPage removed the record from Harter's file regardless because it was not the type of record that leasing properties considered in screening its applicants. Following the dispute resolution, Harter signed a lease with Helios.

In his Original Petition, Plaintiff alleged causes of action against RealPage for Defamation, Libel Per Se, and Defamation Per Se arising out of information RealPage provided in connection with background screening reports requested by the apartment complexes using RealPage software in connection with Plaintiff's housing applications to those complexes (Dkt. #2). These claims were all pleaded under state law in the 380th Judicial District Court of Collin County, Texas. On February 3, 2016, Plaintiff added a cause of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (Dkt. #4). On February 8, 2016, RealPage filed a Notice of Removal in this Court invoking federal question jurisdiction (Dkt. #1).

On June 17, 2016, RealPage filed a Motion for Summary Judgment (Dkt. #18). On July 25, 2016, Harter filed a response (Dkt. #25). On August 1, 2016, RealPage filed a reply (Dkt. #26).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment

is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of

material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but must "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Harter alleges causes of action under Texas law against RealPage for defamation, libel per se, and defamation per se.[1] Harter also alleges a federal cause of action under the Fair Credit Reporting Act ("FCRA"). RealPage moves for summary judgment asserting: (1) it did not make any false statements in the report, (2) the statements are protected by qualified privilege and were made in good faith without actual malice; and (3) the statements are protected by absolute privilege, as Harter consented to the publication. RealPage also asserts the Fair Credit Reporting Act claim fails because the report was accurate and Harter suffered no cognizable damages.

To prove an action for defamation under Texas law, the published statement must be false. Tex. Civ. Prac. & Rem. Code § 73.005(a) ("The truth of the statement in the publication on which an action for libel is based is a defense to the action."); *Neely v. Wilson*, 418 S.W.3d 52, 56 (Tex. 2013) ("Truth is a defense to all defamation actions . . . Statements that are not verifiable as false cannot form the basis of a defamation action."). RealPage asserts that the reports were in fact true because Montgomery County provided public criminal offense

---

[1] Harter also alleges defamation per se, claiming defendant's statement "imputed a loathsome disease to plaintiff." (Dkt. #4). Harter neither introduces evidence on this claim, nor addresses it in his response. The Court is unable to ascertain why Harter alleges this cause of action and finds summary judgment appropriate as to this claim.

information that was associated with Harter. Both background checks reported a conviction in Montgomery County, North Carolina, Case No. 700487 (Dkts. #18-2, #18-3). Specifically, the reports read that Harter had a Montgomery County criminal history and stated the offense was "NOT PROVIDED." A review of Montgomery County's Criminal Disposition Inquiry reveals that Harter did in fact commit two traffic violations on March 10, 2011 (Dkt. #18-11). Harter does not dispute the existence of such conviction; rather, he alleges that the background check presented an inaccurate picture of his background.

Harter asserts it "is undisputed that the report of a criminal background was wrong." (Dkt. #25 p. 2). Harter claims RealPage's email to Legend Oaks proves the report was false. The email reads, "The criminal section of the report provided to you regarding Ethan Arter [sic] on 7/11/2015 was derived from public records from the North Carolina courts. Based upon our investigation, we have determined that the record should be removed from the consumer's file." (Dkt. #18-7). But this email does not support the notion that RealPage made any false statement. The report generated a criminal conviction, which in fact existed.

Harter further asserts, "when Defendant stated that Plaintiff had a criminal record, it was implying, if not stating, that he had been charged with, arrested for or convicted of a sex, drug, or violent crime." (Dkt. #25 p. 5). In the same brief, Harter admits, "Plaintiff acknowledges that Defendant did not state this explicitly . . . the reasonable deduction from the evidence is that the managers viewed the positive report from Defendant as showing the Plaintiff had been arrested for, charged with or convicted of a crime of sex, drugs, or violence." (Dkt. #25 p. 12). Harter makes this extrapolation based on one leasing application that asked whether he had been "charged with, arrested for or convicted of a crime involving sex, drugs or violence." (Dkt. 18-13). This question in the leasing application has nothing to do with RealPage's report. The

5

question in the leasing application does not indicate that the apartment complex only asks for RealPage to provide convictions of sex, drugs, or violent crimes. And RealPage does not purport to only provide reports on such crimes. The evidence indicates the opposite is true. The disclosure statements in both apartment complexes state, "[s]ome Traffic records are included . . . In order for you to assure yourself that this report has not produced a 'false positive,' it is important to work with your applicant to confirm or disprove the match of the criminal record." (Dkts. #18-9, #18-10). RealPage reported that Montgomery County provided RealPage with Harter's criminal history for an offense "NOT PROVIDED." RealPage never reported that Harter had been arrested for or convicted of a crime involving sex, drugs or violence. Harter presented no admissible evidence indicating that the leasing agents interpreted the report to mean Harter had been arrested for or convicted of a crime involving sex, drugs or violence. Speculation about what a person might have thought is inadmissible and cannot create a genuine dispute as to the accuracy of the reports. Fed. R. Civ. P. 56(e); Fed. R. Evid. 602. Harter's allegation that RealPage published a false statement is factually unsupported and cannot serve as a basis for any of his defamation claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

The defamation claims also fail because qualified privilege applies.[2] Qualified privileges against defamation exist when a statement is made in good faith and the author has an interest that is sufficiently affected by the statement. *Neeley*, 418 S.W.3d at 62. The effect of qualified privilege is to justify the communication when it is made without actual malice. *See Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 899 (Tex. 1970). For purposes of summary

---

[2] Absolute privilege also applies, as Harter consented to the criminal background search and publication to the apartment complex in his application (Dkt. #18, Exhibit D-1). *See Smith v. Holly*, 827 S.W.2d 433, 438 (Tex. App. 1992, writ denied) ("Texas cases say that a publication made in response to consent is not actionable . . . Consent creates an *absolute* privilege.").

judgment, the burden of proof is on the defendant to show the communication was made without malice. *See Mayfield v. Gleichert*, 484 S.W.2d 619, 625 (Tex. App.—Tyler 1972, no writ). The defendant can negate actual malice by showing it did not publish the statement with knowledge of its falsity or reckless disregard for its truth. *Huckabee*, 19 S.W.3d at 420. RealPage has negated actual malice because it has proven that the statement was true. The plaintiff must raise a genuine issue of material fact regarding actual malice to survive this motion. Tex. R. Civ. Pro. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (stating a nonmovant "must present summary judgment proof when necessary to establish a fact issue").

To establish a fact issue as to actual malice, Harter must show RealPage made a statement "with knowledge that it was false or with reckless disregard of whether it was true or not." *Huckabee v. Time Warner Entertainment Co.*, 19 S.W.3d 413, 420 (Tex. 2000); *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964). To establish reckless disregard, a plaintiff must prove the publisher "entertained serious doubts as to the truth of his publication." *Huckabee*, 19 S.W.3d at 420; *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). Harter alleges RealPage acted recklessly because it should have investigated whether the criminal report from Montgomery County was true. But failure to investigate has been held insufficient to establish actual malice. *See Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 756 (Tex. 1984) (holding reckless conduct not measured by whether a reasonably prudent person would have investigated before publishing); *El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403, 405–06 (Tex. 1969) (holding proof of failure to investigate does not evidence actual malice). Harter asserts that RealPage acted with reckless disregard, but case law makes clear failure to research the accuracy of information is not grounds for a defamation suit absent other evidence of actual malice. The Court finds that Harter has not set forth summary judgment evidence indicating there is a genuine issue as to defamation

for trial. *See Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). The Court finds all of Harter's defamation claims brought under Texas law, including libel per se and defamation per se, to be factually unsupported.

As to the federal claims under the FCRA, RealPage is entitled to summary judgment because it accurately reported the record and there is no evidence of a willful violation. To establish a prima facie violation of § 1681e(b), a plaintiff must establish that the (1) inaccurate information was included in defendant's credit report; (2) inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) defendant suffered injury; and (4) defendant's injury was caused by the inclusion of the inaccurate entry. *Zala v. Trans Union, LLC,* No. 3:99-CV-0399, 2001 WL 210693, at *3 (N.D. Tex. Jan.17, 2001). RealPage asserts, and the Court agrees, that Harter has failed to show that the report was inaccurate because the report correctly identified that Harter had a public criminal record in Montgomery County.

The Court finds Harter's Section 1681e claim fails because there is no genuine factual dispute regarding an inaccurate statement.[3] However, Harter also asserts the report was incomplete, triggering liability under Section 1681k. But the completeness requirement is unique to credit reports in the employment context. *See* 15 U.S.C. § 1681k (stating a "consumer reporting agency which furnishes a consumer report *for employment purposes* . . . shall maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete

---

[3] Harter's FCRA claims also fail because there is no evidence that Realpage *knowingly or recklessly* published a false statement. Harter fails to demonstrate, at a minimum, Realpage's recklessness with proof of "conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that is should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007).

and up to date"); *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 691–92 (N.D. Ga. 2012) (explaining that the "completeness provision" of Section 1681(k) applies to any credit reporting agency "which furnishes a consumer report for *employment purposes*" (emphasis added)). This section and the completeness requirement are inapplicable because Harter was applying for housing, not employment.

Harter also asserts that RealPage violated Section 1681d(d)(3), which requires agencies conducting "investigative consumer reports" to "verif[y] the accuracy of the information during the 30-day period ending on the date on which the report is furnished." But this section only applies to investigative consumer reports. *See* 15 U.S.C. § 1681d(d)(3); 15 U.S.C. § 1681a(e) (defining investigative consumer reports as reports in which "information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates"). The Court finds Harter has failed to establish a material fact issue on whether RealPage violated the FCRA.

## CONCLUSION

Harter has not demonstrated that RealPage defamed him under Texas law or otherwise violated the FCRA. The statements at issue were truthful and were made in good faith and without actual malice.

It is therefore **ORDERED** that RealPage, Inc.'s Motion for Summary Judgment (Dkt. #18) is hereby **GRANTED**; that Harter take nothing on his claims and causes of action against defendant; and that such claims and causes of action are hereby **DISMISSED** with prejudice.

**SIGNED this 3rd day of November, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE